UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

UNITED STATES OF AMERICA,

                 Plaintiff,

        v.

ROBERT M. REVELES,

                Defendant.

CASE NO.  CR09-5883JRC

ORDER DENYING
DEFENDANT'S MOTION TO
DISMISS FOR ALLEGED
VIOLATION OF THE DOUBLE
JEOPARDY CLAUSE

THIS MATTER comes before the Court on Defendant's motion to dismiss the

Information for alleged violation of the double jeopardy clause (Dkt. 11).  The Court has

considered the following:

       1.      Defendant's Motion to Dismiss Information for Violation of the Double Jeopardy

Clause, with attachments (Dkt. 11);

       2.      Government's Answer to Defendant's Motion to Dismiss Information for

Violation of the Double Jeopardy Clause, with attachments (Dkt. 12);

       3.      Defendant's Reply to Motion to Dismiss Information for Violation of the Double

Jeopardy Clause (Dkt. 14); and

ORDER - 1

1    4.      Defendant's Supplemental Authority in Support of Defendant's Motion to

2  Dismiss (Dkt. 15).

3       After having reviewed the submissions and considered the authorities cited therein, this

4  Court concludes that Defendant's motion to dismiss should be denied.  While Defendant's

5  alleged drunken or reckless driving of a vehicle on a naval base resulted in non-judicial

6  punishment by his commanding officer, this punishment, while perhaps severe, is not so punitive

7  in nature as to transform a *military* punishment into a *criminal* punishment, nor subject the

8  defendant to double jeopardy under the 5th Amendment.

9

10                                **FACTUAL SUMMARY**

11       The parties submitted stipulated facts surrounding the circumstances of this incident, the

12  resulting criminal charges, and defendant's military punishment.  Dkt. 18.  Mr. Reveles is

13  accused of driving while drunk on October 2, 2009 on Naval Base Kitsap in Bremerton,

14  Washington.  He is charged with violation of 18 U.S.C. §§ 7 and 13 and RCW §46.61.502.  Dkt.

15  1.  He was also charged by the Navy in an Article 15 proceeding with 'violation of the Uniform

16  Code of Military Justice, Article 111, drunken or reckless operation of a motor vehicle."  Dkt 18.

17  This is considered Non-Judicial Punishment ("NJP") and does not involve a court-martial.

18  Both charges arise out of the same incident.  *Id.*      Defendant appeared at an Article 15

19  proceeding on October 5, 2009 and his commanding officer imposed the following non-judicial

20  punishment:

21          1.   Restriction to ship for 45 days;

22          2.   Forfeiture of $200 pay for one month;

23          3.   Reduction to next inferior pay grade; and

24          4.   Extra duty for 45 days.

ORDER - 2

1   His 45-day restriction to ship included the following rules:

2         1.  No civilian clothing;

3         2.  No phone privileges;

4         3.  No music of any kind, including ipods or radios;

5

6         4.  No outside food or drink;

7         5.  No television;

8         6.  Muster 5 times per day; and

9         7.  Extra military instruction and duties consisting of cleaning heads, hallways,

10           and offices, along with taking out trash and doing general cleaning.

11   Dkt. 18-2.

12   As noted by counsel for Defendant at oral argument, the court recognizes that many of

13   these punishments are more severe than what is imposed on inmates in federal detention.

14   Defendant has filed a timely motion to dismiss on the grounds that no "person [shall] be subject

15   for the same offence to be twice put in jeopardy of life or limb."  U.S. Const. Amendment V.

16

17   **LEGAL STANDARD**      Although it appears that the Ninth Circuit has not previously

18   addressed this issue directly, several cases throughout the country have considered similar issues

19   and reached inapposite conclusions.  *Compare* United States v. Trogden, 476 F. Supp. 564 (E.D.

20   Va. 2007) *and* United States v. Gammons, 51 M.J. 169 (Ct. App. Armed Forces 1999) *with*

21   United states v. Volpe, 986 F. Supp 122 ( N.D.N.Y. 1997).  Both parties agree that the Supreme

22   Court in the case of Hudson v. United State, 522 U.S. 93 (1997) set for the applicable standard.

23   It noted that the Court has"long recognized that the Double Jeopardy Clause does not prohibit

24   the imposition of all additional sanctions that could 'in common parlance,' be described as

25   punishment."  *Id.* at 98-99 (*quoting* United States ex rel Marcus v. Hess, 317 U.S. 537 (1943).

26

ORDER - 3

1  Instead, "[t]he Clause protects only against the imposition of multiple *criminal* punishments for

2  the same offense." *Id*.at 99.

3     Hudson requires a two-part analysis.  A court must first consider whether a particular

4  punishment is criminal or civil in nature.  This is a matter of statutory construction.  *Id.*  The

5  court considers whether the legislature, "in establishing the penalizing mechanism, indicated

6  either expressly or impliedly a preference for one label or the other." *Id.* (*citing* United States v.

7

8  Ward, 448 U.S. 242, 248 (1980).  In this instance, Congress' purpose in enacting NJP was

9  clearly not to impose a criminal penalty.  The Senate Armed Services Committee commenting on

10  amendments to Article 15 in 1962 stated:  "Since the punishment is nonjudicial, it is not

11  considered as a conviction of a crime and in this sense has no connection with the military court-

12  martial system."  S. Rep. No. 1911, 87th Cong., 2d Sess. (1962) *reprinted* in 1962 U.S.Code

13  Congressional and Administrative News at 2380.  As noted by the Armed Forces Court of

14  Appeals examining a similar case, ".  .  .  the title of the legislation – 'Commanding officer's

15  non-judicial punishment' – underscores the legislative intent to separate NJP from the judicial

16  procedures of the military's criminal law forum, the court-martial."  United States v. Gammons,

17  51 M.J. 169, 177 (Ct. App. Armed Forces 1999).  Additionally, Article 15 provides that "any

18  commanding officer may, in addition to or in lieu of admonition or reprimand, impose one or

19  more of the following *disciplinary* punishments for minor offenses without the intervention of a

20

21  court-martial."  10 U.S.C. § 815(b)(emphasis added).  As has been noted by other courts, this

22  indicates a congressional intention to treat NJP a disciplinary in nature, and not criminal.  See

23  United States v. Trogden, 476 F. Supp. 2d 564, 568 (E.D. Va. 2007); Gammons, *supra*, at 177.

24  This congressional intent is "entitled to considerable deference."  SEC v. Palmisano, 135 F.3d

25

26

ORDER - 4

860, 864 (2nd Cir. 1998).  Therefore, this court concludes that Congress did not intend

disciplinary measures imposed through NJP to be considered criminal in nature.

The second part of the <u>Hudson</u> test is "whether the statutory scheme was so punitive

either in purpose or effect . . .as to 'transfor[m] what was clearly intended as a civil remedy into

a criminal penalty. . ..'"  <u>Hudson</u>, at 99.  The Court recognized seven "guideposts" when

evaluating the punishment – none of which were intended to be dispositive.   The court should

consider :

1.   Whether the sanction involves an affirmative disability or a restraint;

2.   Whether it has historically been regarded as a punishment;

3.   Whether it comes into play only on a finding of *scienter*;

4.   Whether its operation will promote the traditional aims of punishment – retribution and deterrents;

5.   Whether the behavior to which it applies is already a crime;

6.   Whether an alternative purpose to which it may rationally be connected is assignable for it; and

7.   Whether it appears excessive in relation to the alternative proposed purpose assigned.

*Id.* at 99-100.

**FINDINGS**

In analyzing each of these guideposts, the court must evaluate the disciplinary aspect of

each punishment meted out by the commanding officer.  The rigors of military discipline, even

for those service-members who have committed no infraction, can be extreme and sometimes

harsh.  Defendant's commanding officer may order him to be deployed involuntarily to a distant

location, to be separated from family and friends and required to live in extremely confined

quarters on board a ship, and even to be ordered to perform duties that may lead to the ultimate

1   sacrifice – all within the purview of a commanding officer's authority.  Therefore, when

2   evaluating the punitive nature of the discipline in this case, the court must consider the broad

3   authority of the commanding officer to enforce discipline.  Only the "clearest proof" will

4   transform what has been denominated a civil remedy into a criminal penalty.  Hudson, 522 U.S.

5   at 100.

6       1.      Whether the sanction involves an affirmative disability or a restraint.  Here, the

7   court considers whether the sanction involves the "infamous punishment of imprisonment."

8   Hudson , 522 U.S. at 104.  While confined to ship, the defendant was not subject to

9   imprisonment in the brig, which is the traditional form of military imprisonment.

10      2.      Whether it has historically been regarded as a punishment.  While NJP has been

11  considered a "punishment," it is not historically regarded as a "*criminal* punishment."  United

12  States v. Trogden, 476 F. Supp. 2d at 570, *citing* United States v. Burns, 29 F. Supp. 2d 318, 322

13  (E.D. Va. 1998).  "NJP provides military commanders with 'an essential and prompt means of

14  maintaining good order and discipline and also promotes positive behavior changes in service

15  members without the stigma of a courtmartial conviction."  Manual for Courts-Martial, United

16  States, Part V, para 1c.  Therefore, historically, NJP is considered as a disciplinary measure and

17  not a criminal punishment.

18      3.      Whether it comes into play only on a finding of scienter.  It is clear in this case

19  that NJP may impose this disciplinary punishment regardless of the intent of the defendant.  An

20  inquiry into the violator's state of mind is not a factor in determining military discipline of this

21  sort.

22      4.      Whether its operation will promote the traditional aims of punishment.  While

23  NJP invokes the traditional aims of punishment-retribution and deterrence, this does not mean

ORDER - 6

that the punishment is criminal in nature.  As the Supreme Court has stated, "All civil penalties

have some deterrence affect."  Hudson, at 102.  This, by itself, does not render a sanction as

criminal, even though it is intended to deter.  Certainly the Government has a significant interest

in maintaining discipline in its military.  Therefore, although the sanctions have a deterrence

effect, this does not transform a sanction into a criminal penalty.

5.      Whether the behavior to which it applies is already a crime.  Certainly, Defendant

faces criminal charges for this activity.  Nevertheless, civil penalties in addition to criminal

charges do not make the criminal charges double jeopardy.  *See* United States v. Dixon, 509 U.S.

688, 704 (1993).

6.      Whether an alternative purpose to which it may rationally be connected is

assignable for it.  As noted above, military discipline has the alternative purpose of maintaining

order in the military, which is fundamentally different from criminal punishment.  "Discipline,

which entails the control of armed forces through prompt obedience of superior order is an

integral component of successful military observations.  United States v. Gammons, 51 M.J. at

178.

7.      Whether it appears excessive in relation to the alternative proposed purpose

assigned.  The military discipline imposed upon the Defendant is certainly severe, but it does not

appear to be excessive in relation to the goals it is attempting to achieve.  It is not for this Court

to second guess a commanding officer's order.  Therefore, the orders imposed by this

commanding officer, albeit severe, do not give rise to criminal penalties.

In summary, this court concludes that there is no indication that Congress ever intended

for NJP to be criminal, in nature.  In fact, to the contrary, it appears that Congress intended NJP

ORDER - 7

1   to serve as an alternative to court-martial.  Nor is NJP, at least as applied in this case, so onerous

2   as to transform what was intended to be a civil remedy into a criminal penalty.

3                                              **ORDER**

4           Based on the foregoing, , the criminal charges before the court do not violate the Fifth

5   Amendment Double Jeopardy Clause.  Defendant's motion to dismiss (Dkt. 11) is denied.

6           DATED this 27th day of April, 2010.

7

8

9                                                              J. Richard Creatura
                                                               United States Magistrate Judge
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

ORDER - 8